Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY TEOW,<br><br>    Plaintiff,<br><br>    v.<br><br>PROTEON THERAPEUTICS, INC., PAUL J. HASTINGS, TIMOTHY P. NOYES, HUBERT BIRNER, GAREN BOHLIN, JOHN G. FREUND, ARTARA THERAPEUTICS, INC., and REM 1 ACQUISITION, INC.,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Jeffrey Teow ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.    This is an action against Proteon Therapeutics, Inc. ("Proteon" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") between Proteon and ArTara Therapeutics, Inc. ("ArTara"), pursuant to which REM 1 Acquisition, Inc. ("Merger Sub"), a wholly-owned subsidiary of Proteon, will merge with and into ArTara, with ArTara surviving as a wholly-owned subsidiary of Proteon.[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, ArTara is headquartered in New York, N.Y., and the combined company will be headquartered in New York, N.Y.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] According to the Registration Statement, Proteon will then undergo a name change to ArTara Therapeutics, Inc. and will list its securities on the Nasdaq Capital Market under the symbol, "TARA."

**PARTIES**

6. Plaintiff is, and has been at all relevant times hereto, an owner of Proteon common stock.

7. Defendant Proteon is a late-stage biopharmaceutical company that focuses on the development of pharmaceuticals to address the needs of patients with renal and vascular disease. More specifically, Proteon is "focused on improving the health of patients with kidney and vascular diseases through the development of novel, first-in-class therapeutics." Its lead product candidate is vonapanitase, an investigational drug intended to enhance hemodialysis vascular access outcomes. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "PRTO."

8. Defendant ArTara is a development stage biopharmaceutical company focused on rare diseases of the liver and gastrointestinal tract, nervous and circulatory systems in adults and children. Defendant ArTara is a Delaware corporation which maintains its headquarters in New York, N.Y. ArTara is a party to the Merger Agreement (defined below).

9. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Proteon, and a party to the Merger Agreement.

10. Defendant Paul J. Hastings ("Hastings") is Chairman of the Board of the Company.

11. Defendant Timothy P. Noyes ("Noyes") is Chief Executive Officer, President, and a director of the Company.

12. Defendant Hubert Birner ("Birner") is a director of the Company.

13. Defendant Garen Bohlin ("Bohlin") is a director of the Company.

14. Defendant John G. Freund ("Freund") is a director of the Company.

3

15. Defendants Hastings, Noyes, Birner, Bohlin, and Freund are collectively referred to herein as the "Individual Defendants."

16. Defendants Proteon, ArTara, Merger Sub, and the Individual Defendants are collectively referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A. Background Leading up to the Proposed Transaction**

17. On April 15, 2019, the Company announced its plans to "explore a range of strategic options to enhance shareholder value." The Board decided to explore all strategic alternatives for Proteon in light of the Company "[h]aving missed statistical significance on both co-primary endpoints in PATENCY-2, Proteon's second Phase 3 trial of investigational vonapanitase[.]"

18. Effective that same date, Scott A. Canute ("Canute"), Tim Haines ("Haines"), Stuart A. Kingsley ("Kingsley"), and Jonathan Leff ("Leff") resigned as members of the Board.

19. According to the Company's Form 10-K/A filed with the SEC on April 12, 2019 (the "2019 10-K/A"), former Board members Canute, Haines, Kingsley, and Leff were the collective, beneficial owners of over 10.5% of Proteon shares as of April 10, 2019:[2]

| Name | Number of Shares Beneficially Owned | Percentage of Shares Beneficially Owned |
|---|---|---|
| Canute | 39,365 | * |
| Haines[3] | 2,057,236 | 10.5% |
| Kingsley | 39,365 | * |
| Leff | 17,144 | * |

---

[2] The 2019 10-K/A was filed just three days before the sudden resignation of former Board members Canute, Haines, Kingsley, and Leff,

[3] Mr. Haines was "deemed to share beneficial ownership in the shares held by Abingworth [Bioventures VI, LP., and related funds]."

4

**B. The Proposed Transaction**

20. On September 23, 2019, Proteon entered into an agreement and plan of merger and reorganization (the "Merger Agreement") with ArTara and Merger Sub.

21. That same day, Proteon and ArTara issued a press release announcing the Proposed Transaction. Under the terms of the agreement, ArTara stockholders will receive shares of Proteon common stock in exchange for shares of ArTara capital stock in an amount equal to the number of shares of ArTara capital stock held by such stockholder multiplied by the "Exchange Ratio." Concurrent with the merger, certain healthcare investors entered into a stock purchase agreement to invest $42.5 million in the combined company.

22. After the consummation of the Proposed Transaction and closing of the financing, holders of pre-merger Proteon common stock are expected to hold approximately 10% of the combined company while ArTara security holders and new investors will own approximately 90% on a fully diluted basis. According to the Registration Statement (defined below), Proteon's base valuation is $7.25 million, which is subject to adjustment based on Proteon's net cash and certain factors. The press release states, in pertinent part:

**Proteon Therapeutics and ArTara Therapeutics Agree to Combine**

September 23, 2019 16:20 ET | Source: Proteon Therapeutics, Inc.

Transaction to Create NASDAQ-Listed Rare and Specialty Disease Therapeutic Company Focused on Immunology and Metabolic Disorders

$42.5M Concurrent Financing to be Led by a Syndicate of Healthcare Dedicated Investors

Companies to Hold Conference Call on September 24th at 8:30AM EDT

WALTHAM, Mass. and NEW YORK, Sept. 23, 2019 (GLOBE NEWSWIRE) -- Proteon Therapeutics, Inc. ("Proteon") (Nasdaq: PRTO), a company developing novel, first-in-class pharmaceuticals to address the medical needs of patients with kidney and vascular diseases, and ArTara Therapeutics, Inc. ("ArTara"), a private

5

clinical stage biopharmaceutical company developing treatments for rare and specialty diseases with significant unmet therapeutic needs, announced today that they have entered into a definitive agreement in which a wholly-owned subsidiary of Proteon will merge with ArTara in an all-stock transaction. The merged company will focus on advancing ArTara's pipeline of transformative late-stage, de-risked rare and specialty diseases assets. Upon stockholder approval, the combined company is expected to operate under the name ArTara Therapeutics, Inc. and trade on the Nasdaq Capital Market under the ticker symbol TARA.

A syndicate of healthcare dedicated investors have concurrently entered into a stock purchase agreement to invest $42.5 million in the combined company. This financing will help fund the development of ArTara's lead assets TARA-002 and IV Choline Chloride and is expected to be consummated concurrently with the closing of the transaction.

ArTara is a clinical stage therapeutics company focused on acquiring and modernizing high-potential, de-risked product candidates for rare and specialty diseases. ArTara's current development programs focus on the treatment of rare diseases in structural and connective tissues as well as rare hepatology and metabolic disorders.

\*   \*   \*

"We are excited about the opportunity for this merger, which will allow ArTara to help fill the void in treatment options for these two rare diseases and potentially address additional significant unmet need in other disease areas," said Jesse Shefferman, CEO of ArTara.

\*   \*   \*

**About the Proposed Transaction**

Under the terms of the merger agreement, on a pro-forma basis after closing of the merger and the closing of the financing, the current Proteon stockholders will own approximately 10% of the combined company, while ArTara security holders and new investors will own approximately 90% (on a fully diluted basis). The actual allocation between the two groups of stockholders is subject to adjustment based on Proteon's net cash prior to the completion of the Transaction.

The transaction has been unanimously approved by the Board of Directors of both companies, and is expected to close by year end 2019, subject to customary conditions, including approval by Proteon and ArTara stockholders and the satisfaction of the conditions under the stock purchase agreement. The investment pursuant to the stock purchase agreement is expected to be consummated concurrently with the closing of the transaction.

6

> H.C. Wainwright & Co. is acting as financial advisor to Proteon, and Morgan, Lewis & Bockius LLP is acting as legal counsel to Proteon. Ladenburg Thalmann & Co. Inc. is acting as financial advisor to ArTara, and Cooley LLP is acting as legal counsel to ArTara.
>
> **Management and Organization**
>
> The combined company will be led by Jesse Shefferman, ArTara Chief Executive Officer, and will be headquartered in New York, NY. The board of directors is expected to be composed of 7 members, with 5 such members designated by ArTara, 1 such member designated by Proteon, and Mr. Shefferman.

23. On November 7, 2019, Defendants caused to be filed with the SEC a Form S-4 Registration Statement under the Securities Act of 1933 (the "Registration Statement") in connection with the Proposed Transaction.

24. According to the Registration Statement, as of September 30, 2019, the directors and executive officers of Proteon and other stockholders who in the aggregate own approximately 17.64% of the shares of Proteon common stock are parties to voting agreements "whereby such stockholders have agreed to vote their shares in favor of the adoption or approval, among other things, of the Merger Agreement[.]"

## C. The Registration Statement Contains Materially False and Misleading Statements and Omissions

25. The Registration Statement, which recommends that Proteon shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) ArTara's financial projections; (ii) the financial analyses performed by Proteon's financial advisor, H.C. Wainwright & Co., LLC ("Wainwright"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

26. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the Proteon Board; (ii) Proteon Reasons for the Merger; (iii) Certain Unaudited ArTara

7

Financial Projections; (iv) Background of the Merger; and (v) Opinion of the Proteon Financial Advisor.

27. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Proteon shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning ArTara's Financial Projections**

28. The Registration Statement omits material information concerning ArTara's financial projections.

29. The Registration Statement provides that, "in connection with its evaluation of the Merger, the Proteon Board considered certain financial projections with respect to ArTara. On September 5, 2019, ArTara management provided to Wainwright and the Proteon Board unaudited, non-public financial projections with respect to ArTara for each of the calendar years ending December 31, 2020 through 2035 (the "ArTara financial projections")."

30. The Registration Statement provides a "table . . . present[ing] a selected summary of the unadjusted ArTara financial projections that were made available to Wainwright and the Proteon Board."

31. The Registration Statement, however, fails to disclose the following concerning the ArTara financial projections: (1) all line items used to calculate EBIT; and (2) a reconciliation of all non-GAAP to GAAP metrics.

32. When a company discloses non-GAAP financial metrics in a Registration Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections

8

and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[4]

33. The disclosure of ArTara's projected financial information is material because it would provide Proteon shareholders with a basis to project the future financial performance of the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

34. Accordingly, in order to bring the Registration Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the ArTara financial projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their

---

[4] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Nov. 30, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.

35. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Proteon shareholders.

### 2. Material Omissions Concerning Wainwright's Financial Analyses

36. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Wainwright.

37. The Registration Statement fails to disclose the following concerning Wainwright's "*Discounted Cash Flow Analysis*": (1) ArTara's projected unlevered cash flows and all underlying line items;[5] (2) the terminal value of ArTara; (3) ArTara's estimated net operating profit after taxes; (4) the basis for Wainwright's assumed terminal valuation range of 4x and 12x EBIT; and (5) the individual inputs and assumptions underlying the (i) 20.0% to 30.0% discount rate, and (ii) perpetuity growth rate of between 1% and 3%.

38. The valuation methods, underlying assumptions, and key inputs used by Wainwright in rendering its purported fairness opinion must be fairly disclosed to Proteon shareholders. The description of Wainwright's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without this information, the Company's shareholders are unable to fully understand Wainwright's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if

---

[5] The Registration Statement provides that "financial forecasts, relating to . . . cash flow . . . of . . . Proteon and ArTara . . . were furnished to Wainwright by management of Proteon and ArTara, respectively[.]" *See* Registration Statement at 114.

disclosed, would significantly alter the total mix of information available to Proteon shareholders.

### 3. Material Omissions Concerning the Sales Process Leading to the Proposed Transaction

39. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

40. The Registration Statement provides that Proteon "received preliminary oral proposals from each [of Company E, Company F, Company G, and Company H] later in July 2019."

41. The Registration Statement, however, fails to disclose with sufficient specificity the preliminary oral proposals that Proteon received in July 2019.[6]

42. The Registration Statement provides that on August 7, 2019, Company H submitted a written proposal to Proteon which valued Proteon at $13.5 million and included a $20 million round of financing to be invested concurrent with the merger closing. The next day, Proteon spoke with one of Company H's financial advisors, during which "Proteon communicated aspects of the merger terms and associated financing terms that were not optimal."

43. The Registration Statement provides that on August 16, 2019, Proteon received a revised proposal from ArTara that valued Proteon at $7.25 million and a revised $42.5 million funding term sheet. Meanwhile, that same day, Proteon received a revised proposal from Company H that valued Proteon at $12.5 million and a revised term sheet for $20 million in financing.

44. On an August 19, 2019 call involving the Proteon Board, Proteon management, and

---

[6] According to the Registration Statement, the Board had a July 25, 2019 meeting during which it was noted that Company E, Company F, and Company H had not "submitted written proposals to Proteon at this time." But the Registration Statement still fails to disclose with sufficient specificity the content of any "preliminary oral proposals" the Company received from these companies.

11

Proteon's legal advisors, the Board favored advancing discussions and diligence efforts with Company H, among others. Proteon favored Company H because it "controlled assets with the potential for application in several rare dermatological diseases[, including an asset that] had previously received regulatory approval but with an inferior formulation, and thus was perceived to have a lower risk in its clinical and regulatory development pathway from an efficacy and safety perspective." Moreover, "Company H was also believed to have a strong, recognizable management team but had an inferior financing term sheet to support Company H's merger proposal."

45. Given the aforementioned, the Company must disclose, with greater specificity, how Company H's financing term sheets were inferior in August 2019.[7]

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against Proteon and the Individual Defendants

46. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47. During the relevant period, Proteon and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

---

[7] According to the Registration Statement, the Board authorized management to sign the term sheet with ArTara and not Company H on August 30, 2019 because "Company H [did] not hav[e] a revised financing term sheet with[] downside price protection for the new investors in Company H[.]" Still, Proteon investors must be informed with detail regarding how Company H's financing term sheets were inferior at various points in time in August 2019.

12

48. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Proteon and the Individual Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. Proteon and the Individual Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

49. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, Proteon and the Individual Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants, ArTara, and Merger Sub

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. The Individual Defendants, ArTara, and Merger Sub acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence

and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

54. Each of the Individual Defendants, ArTara, and Merger Sub was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

56. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual

Defendants.

57. By virtue of the foregoing, the Individual Defendants, ArTara, and Merger Sub have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants, ArTara, and Merger Sub had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants, ArTara, and Merger Sub are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

15

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: November 30, 2019          Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
      zhalper@halpersadeh.com

*Counsel for Plaintiff*